IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KATHY MCELROY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:20-CV-1040-KFP |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kathy McElroy, seeks judicial review of the Social Security Administration's decision denying her application for Social Security Disability Benefits and Supplemental Security Income Benefits. Based on review and consideration of the record, briefs, applicable regulations, and caselaw, this matter is REVERSED and REMANDED to the Commissioner for further consideration.

**I.   STANDARD OF REVIEW**

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope is limited to determining whether substantial evidence in the record as a whole supports the Commissioner's decision and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is more than a scintilla but less than a preponderance. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner and, even if the evidence

preponderates against the Commissioner's factual findings, the Court must affirm if the decision is supported by substantial evidence. *Winschel*, 631 F.3d at 1178; *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff filed her application for disability benefits on April 23, 2019, alleging a disability onset of December 31, 2014, due to panic attacks, headaches, dizziness, leg pain, depression, and high blood pressure. R. 62–63, 154–161, 169, 173. Plaintiff, who has an eighth-grade education and past relevant work experience as a cashier, salesclerk, housekeeper, and cook/helper, was forty-three years old at the alleged onset of disability and forty-eight years old at the time of the ALJ's decision. R. 169, 174, 187.

On April 15, 2020, the ALJ held an administrative hearing. At the hearing, Plaintiff testified about her physical and mental impairments. She alleged that she stopped working due to panic attacks that began after she was a victim of a robbery at work and that her anxiety and panic attacks caused blurred vision, tingling in her arm, difficulty breathing, and a feeling "like [she is] in a hole or something." R. 43–44. She stated that she had panic attacks "around people," so she didn't "go out;" she "stay[ed] home." R. 44. She also stated that she had difficulty focusing and that she tried to do artwork, but "it's hard to pay attention and concentrate on doing it." R. 48, 50. Regarding depression, she further testified as follows:

> [ATTORNEY]: Okay. Now I know you, you did mention some of your mental health issues, and with respect to your depression, can you talk to me about what your depression causes you to experience, please?

2

> [PLAINTIFF]: I don't go out. I don't talk to nobody. I just stay down and depressed all the time. I don't wanna do nothing.
>
> [ATTORNEY]: And your records mentioned getting easily overwhelmed. Can you tell me what that means to you or what you experience?
>
> [PLAINTIFF]: It's -- I can't, I don't know how to explain it, I just can't put anything to words myself. But it's, I can't focus. I wanna do things but I can't do it.
>
> [ATTORNEY]: Okay. Now, lastly, with respect to your mental health conditions, if you were placed in a work environment, and had to deal with work pressure, would you be able to handle that?
>
> [PLAINTIFF]: I don't think so.

R. 52.

Plaintiff testified that she has no income and receives no assistance except food stamps. R. 43-44. The ALJ questioned Plaintiff regarding her lack of treatment, her ability to afford treatment, and treatment she sought at the Samaritan Clinic approximately eight times between 2015 and 2017.[1] R. 37-38. The Samaritan Clinic is a "free clinic" on the campus of a ministry known as Love in Action. R. 385. "The Samaritan Clinic delivers limited medical care to indigent and homeless persons" through its "volunteer doctors who help to take care of basic healthcare needs." R. 231, 385. Hearing testimony regarding Plaintiff's ability to afford treatment, attempts to access free or low-cost treatment, and past treatment at Samaritan Clinic[2] was as follows:

---

[1] March 31, 2017, was Plaintiff's date last insured. R. 385.

[2] The Samaritan Clinic did not provide medical records, either in response to requests from Plaintiff's attorney or in response to the Commissioner's subpoena to Love in Action Ministries. R. 230–231, 385–386. The Samaritan Clinic and Love in Action ministries stated that the Samaritan Clinic does not test for or make a determination of disability and does not release records for any person treated in the facility. R. 231. Samaritan Clinic requires its patients to sign a form acknowledging that the clinic "will not release

3

ALJ: . . . . And what were they treating you for there [at the Samaritan Clinic]?

[PLAINTIFF]: High blood pressure, allergies.

ALJ: Allergies, high blood pressure. Were you getting any mental –

[PLAINTIFF]: Headache.

ALJ: -- health treatment there?

[PLAINTIFF]: No, ma'am.

ALJ: Okay. All right, and would they do anything [INAUDIBLE]

[PLAINTIFF]: Headaches. Headaches.

ALJ: Headaches. Okay.

[PLAINTIFF]: Yes, ma'am.

ALJ: And you would get any medications from there?

[PLAINTIFF]: Yes, ma'am.

ALJ: Okay. And do you remember what pharmacy you filled those medications at by chance?

[PLAINTIFF]: They don't get, they don't write prescriptions, they give you the medication there, what they have on-hand.

. . . .

ALJ: Okay. And are, are you going for treatment anywhere for [panic attacks]?

[PLAINTIFF]: No, ma'am. Not at this time.

ALJ: Okay. And have you gone for treatment for that, have you gone for therapy?

---

information to the Department of Disability Determination, or [a]ttorneys, for [d]isability [c]laims." R. 231, 385.

> [PLAINTIFF]: No, ma'am. I have no income so it's kinda hard to afford things on it.
>
> ALJ: Okay. All right. Are you taking any kind of medication now for that?
>
> [PLAINTIFF]: No, ma'am.
>
> ALJ: Okay. And, let me ask you about your, your blood pressure, how're you doing with that?
>
> [PLAINTIFF]: It gets high, pretty much.
>
> ALJ: Okay. Are, are, are you, are you able to afford medication for that or are you getting some assistance with that?
>
> [PLAINTIFF]: I get I have to go to the hospital sometimes when it gets up so high.
>
> ALJ: Okay. I see Southeast Alabama Medical Center in your records. Are they prescribing that for you, they're prescribing the medications for you?
>
> [PLAINTIFF]: Yeah. Well with [Samaritan Clinic] is giving me medication for the blood pressure.
>
> ALJ: Okay. Are they still, are they still treating you, the [Samaritan Clinic]?
>
> [PLAINTIFF]: Well, my ride had had a stroke, so I hadn't been able to go back, but I, I have -- if I go back I'm, I'm sure they would. But, that is just getting a way up there.
>
> ALJ: Okay. So at, at this time you're, you're not able to get your medication for hypertension, is that it?
>
> [PLAINTIFF]: That's it.
>
> ALJ: Okay.
>
> [PLAINTIFF]: For the blood pressure.

R. 39–40; 44–45.

5

After the hearing, the ALJ issued an opinion finding Plaintiff had the severe impairments of degenerative disc disease, anxiety disorder, major depressive disorder, and hypertension but that she did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 17–20.

In determining Plaintiff's residual functional capacity, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of" Plaintiff's physical and mental impairments "were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." R. 17. The ALJ discounted Plaintiff's subjective statements regarding her mental health impairments[3] for the following reasons: (1) because Plaintiff did not indicate "that she sought low-cost or free assistance" for her anxiety "from any other source over the several years that she alleges she was suffering incapacitating symptoms;" (2) because the treatment notes for medical visits for acute physical conditions contained no mention of complaints or medical findings of depression, anxiety, or panic attacks, and (4) because the ALJ concluded Plaintiff's statements were inconsistent with Plaintiff's daily activities.[4]

---

[3] The ALJ also discounted Plaintiff's statements regarding the limiting effects of her physical impairments for several reasons, including lack of treatment, lack of prescription medication, the fact that Plaintiff did not mention other physical impairments when she sought emergency room treatment for reasons not related to those physical impairments, the fact that Plaintiff "denied returning for blood pressure medication even from a free source she reported using in the past," and Plaintiff's daily activities. R. 21–22. On appeal, Plaintiff's allegations of error concern only the ALJ's evaluation of her mental health conditions.

[4] The Commissioner contends that the ALJ also discounted Plaintiff's statements regarding the limiting effects of her mental health impairments because of "Dr. Sims' prior administrative medical finding." Doc.

In determining the limiting effects of Plaintiff's severe mental health impairments on Plaintiff's residual functional capacity, the ALJ also considered and partially rejected the opinion of Dr. Randy Jordan, Psy.D., a licensed clinical psychologist who performed a one-time consultative examination of Plaintiff on June 14, 2019. R. 25, 329–330. Specifically, the ALJ did not agree with Dr. Jordan's findings that Plaintiff had moderate limitations in the ability to maintain attention and concentration for at least two hours and that Plaintiff was "moderately limited" in her "ability to maintain a regular work schedule without missing more than 2 days due to psychological symptoms." R. 330. The ALJ discounted those two conclusions because (1) they were inconsistent with the global assessment of function (GAF) score of 60 assigned by Dr. Jordan,[5] "which lists only moderate symptoms" and "is only one point below a rating for 'mild symptoms'"; (2) "[t]here is no treatment in support of that understanding of the claimant's limitations"; and

---

17 at 4. However, the ALJ noted the findings of the non-examining physician, Dr. Sims, were "persuasive except" to the extent that those findings were inconsistent with the findings in Dr. Jordan's mental health evaluation. R. 25. The ALJ noted that Dr. Sims did not examine the claimant and that Dr. Sims's findings "could not be found entirely persuasive in comparison to Exhibit 3F," which is Dr. Jordan's mental health evaluation report. R. 25. The ALJ further noted that, unlike Dr. Jordan, Dr. Sims "actually suggested that there was no basis for finding a severe impairment, so, in that respect, his assessment was not heavily relied upon." R. 25. The ALJ did find that "the state agency physician's opinion . . . regarding the *physical* limitations is persuasive" and "well supported by the record and consistent with the remainder of the evidence," though it is not clear whether the ALJ was referring to Dr. Sims or another physician, Dr. Victoria L. Hogan, as "the state agency physician." R. 25 (emphasis added). Nevertheless, in light of the ALJ's comments describing "the state agency psychologist" as a non-examining physician whose opinion conflicted with Dr. Jordan's and who (unlike Dr. Jordan and the ALJ) found no basis for a severe impairment, and considering the identity of the authors of the medical opinions in the exhibits the ALJ cited, it is apparent that the ALJ gave limited weight to Dr. Sims's conclusions about Plaintiff's *mental* limitations, especially in contrast to Dr. Jordan's evaluation.

[5]Despite relying on the GAF score as grounds to discount Dr. Jordan's opinion, the ALJ also found that "there can be no significant weight provided to the [GAF score]." R. 26. The Plaintiff agrees with the ALJ that GAF scores are of limited use in evaluating the severity of a claimant's medically determinable impairments on the claimant's functioning. R. 26; Doc. 16 at 6–7.

7

(3) the conclusions of "moderate limitations" caused an "internal inconsistency with the record."[6] R. 25. "Moreover," the ALJ stated, "this level of functioning was ascribed to the claimant with literally no mental health treatment, even medications from a primary care physician. The claimant does not even have evidence of reports about anxiety or depression when she obtained treatment at the emergency room" for physical conditions not related to her mental health. R. 25. In addition, the ALJ found that "there is no basis in the evidence for a reading of the statement by [Dr. Jordan] regarding missing more than two days due to psychological symptoms to mean that the claimant will miss two days of work per month (or week, or year)." R. 25.

After determining the extent to which the claimant's impairments limited the claimant's work-related activities, the ALJ then found that Plaintiff has the following residual functional capacity:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to simple, routine, and repetitive tasks. The claimant can attend for two hours at a time and would require few, gradually introduced workplace changes. The claimant can perform occasional overhead reaching bilaterally, frequent reaching otherwise. The claimant can never work at unprotected heights or around hazards. The claimant can never drive commercial vehicles, tolerate extreme temperatures, or work around concentrated vibration. The claimant can frequently balance, kneel, stoop, crouch, and crawl.

R. 20–21.

---

[6] The Commissioner contends that the ALJ also discounted Dr. Jordan's medical opinions regarding the limiting effects of her mental health impairments because of "Dr. Sims' prior administrative medical finding." Doc. 17 at 12. However, as explained, supra, note 5, although the ALJ's opinion is somewhat opaque, a careful reading indicates that the ALJ did not rely on the results of Dr. Sims's non-examining review of the medical record to discredit Dr. Jordan's opinion regarding Plaintiff's mental health limitations.

The ALJ found Plaintiff could not perform her past relevant work, then considered whether Plaintiff could perform other work existing in significant numbers in the national economy. Tr 26-28. To make this determination, the ALJ relied on hypothetical questions posed to a vocational expert ("VE") at the administrative hearing. Among those questions was whether an individual with the claimant's age, education, work experience, and residual functional capacity would be able to perform jobs that existed in significant numbers in the national economy, to which the VE replied in the affirmative. R. 53. The ALJ also asked if the same would be true of an individual with the claimant's age, education, work experience, and residual functional capacity who would also "miss two to three days per month secondary to medical conditions." R. 56–57. The VE replied: "Your Honor, with an absenteeism rate at this level I would not be able to identify any occupations that the person could sustain on a continuing full-time basis." R. 57. After considering the testimony of the VE, the ALJ determined that Plaintiff could perform other work existing in significant numbers in the national economy, such as electrical accessories assembler, collator operator, and floor attendant. R. 27–28. Accordingly, the ALJ found Plaintiff was not disabled through the date of her decision. R. 28.

On July 15, 2020, Plaintiff requested administrative review of the ALJ's decision. R. 4. On October 28, 2020, the Commissioner denied the request for review. R. 1. On December 16, 2020, Plaintiff filed this appeal. Doc. 1.

## III. ISSUES AND ANALYSIS

### A. The ALJ erred as a matter of law in drawing an adverse inference from Plaintiff's lack of mental health treatment without first adequately developing the record and considering Plaintiff's claimed reason for not seeking that treatment.

On appeal, Plaintiff asserts that the ALJ erred in the following ways: (1) by failing to articulate adequate reasons for discounting Plaintiff's subjective statements regarding the limiting effects of her severe mental health impairments; (2) by discounting Dr. Jordan's conclusions that Plaintiff had "moderate limitations in the ability to maintain attention and concentration for at least two hours, and that Plaintiff was "moderately limited" in her "ability to maintain a regular work schedule without missing more than 2 days due to psychological symptoms," R. 330; (3) by failing to adequately and specifically articulate the basis for the residual functional capacity she assigned to Plaintiff; (4) by assigning Plaintiff a residual functional capacity that did not incorporate Dr. Jordan's and Plaintiff's allegations as to the limiting effects of her severe mental health impairments; and (5) by relying on the VE's response to a hypothetical question that assigned Plaintiff a residual functional capacity that did not account for Plaintiff's psychological limitations in ability to maintain pace and concentration and to maintain a regular work schedule. Although Plaintiff brings up other reasons why she contends each of these items constituted error, Plaintiff raises one argument that is inextricably bound to all of the alleged points of error: in discounting Plaintiff's testimony and Dr. Jordan's opinion and evaluating the effects of Plaintiff's mental health impairments on her residual functional capacity, the ALJ improperly relied on Plaintiff's failure to seek treatment for her severe mental health

impairments without first adequately developing the record as to Plaintiff's allegation that she could not afford or access mental health care.

While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment." *Sims v. Astrue*, No. 3:09CV366-CSC, 2010 WL 2952686, at *5 (M.D. Ala. July 26, 2010) (citing *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988)). "'To a poor person, a medicine that [s]he cannot afford to buy does not exist.'" *Dawkins*, 848 F.2d at 1213 (11th Cir. 1988) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987)). Therefore, "when a 'claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.'" *Id*. (quoting *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

"The burden of producing evidence concerning unjustified noncompliance is on the [Commissioner]." *Dawkins*, 848 F.2d at 1214 n.8; *see also Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("[B]ecause a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."). "[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment," and the ALJ "must consider evidence showing that the claimant is unable to afford medical care before denying" benefits based on non-compliance with such care. *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483,

11

487 (11th Cir. 2012); SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at * 9 ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); *see also Brown v. Comm'r of Soc. Sec.*, 425 F. Appx 813, 817 (11th Cir. 2011) ("[T]he ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment.") (citation omitted).

Here, the Commissioner did not develop the record concerning Plaintiff's testimony that she could not afford treatment for her anxiety. R. 43–44. Although Plaintiff's explanation that she did not get mental health treatment or therapy because she "ha[s] no income so it's kinda hard to afford things on it," the ALJ discounted Plaintiff's subjective allegations of her mental health symptoms on grounds that Plaintiff gave "no indication that she sought low-cost or free treatment for her anxiety, mentioned it when she sought treatment for other acute impairments at the emergency room, or sought any sort of free assistance from any other source over the several years that she alleges she was experiencing incapacitating symptoms." R. 24, 44. However, the ALJ did not inquire as to whether free or low-cost mental health treatment was available or accessible, and nothing in the current record demonstrates that free or affordable mental health treatment was available to Plaintiff or that she could access it if it did.

At the hearing, Plaintiff testified that, when she had access to transportation to Samaritan Clinic in the past, she sought free treatment for headaches and high blood pressure there. R. 39, 44–45. The ALJ did ask whether Plaintiff was receiving mental health

treatment at Samaritan Clinic, to which the Plaintiff replied that she was not. R. 39. However, the ALJ did not ask why Plaintiff was not receiving mental health treatment from Samaritan clinic or whether Samaritan Clinic offered treatment for mental health. Samaritan Clinic operates with "volunteer doctors" who provide "limited medical care" to indigent and homeless persons to "help to take care of basic health care needs." R. 231, 385. The Samaritan Clinic does not write prescriptions and only offers medication that it has "on hand." R. 38. On this record, there is no rational basis for assuming that Plaintiff could have obtained adequate free or low-cost mental health treatment at the Samaritan Clinic; moreover, even if such treatment was available, Plaintiff testified that she can no longer access the Samaritan Clinic because of lack of transportation. R. 45.

Accordingly, the ALJ erred in rejecting Plaintiff's allegation that she could not afford mental health treatment and in drawing adverse inferences from lack of treatment without adequately developing the record as to whether such treatment was available for free or at a reduced cost that Plaintiff could afford and access. *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) (holding that the ALJ failed in his obligation to 'scrupulously and conscientiously probe' into the reasons underlying a Plaintiff's conservative course of treatment where "nothing in the record indicat[ed] the ALJ inquired into or considered [the plaintiff's] financial ability to seek an alternate treatment plan."); SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *10 ("[W]e will consider and address reasons for not pursuing treatment that are pertinent to an individual's case."); *see also Baker v. Astrue*, No. 1:11CV35-CSC, 2012 WL 353738, at *4 (M.D. Ala. Feb. 2,

2012) (finding that the ALJ failed to develop the record by "simply assum[ing]" that free resources were available that could provide the medical treatment required by the plaintiff).

### B. The ALJ's failure to develop the record was not harmless error.

"When the ALJ relies 'primarily if not exclusively' on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure," the error is not harmless, and the cases must be remanded for further consideration. *Henry*, 802 F.3d at 1268 (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003)). *Cf. Ellison*, 355 F.3d at 1275 (holding that the ALJ's failure to consider a claimant's inability to afford medical treatment was not reversible error because the ALJ's disability determination was "not significantly based on a finding of noncompliance").

In discounting Plaintiff's subjective statements regarding the severity and limiting effects of her mental health impairments, in partially discounting Dr. Jordan's opinion, and in determining Plaintiff's residual functional capacity (which, in turn, formed the basis of hypotheticals posed to the VE), the ALJ relied significantly on adverse inferences based on Plaintiff's lack of medical treatment and failure to seek treatment for her mental health impairments. Even the Commissioner recognizes this in her brief on appeal. *See, e.g.,* Doc. 17 at 3–7, 12.

Accordingly, the ALJ's error in failing to develop the record regarding Plaintiff's alleged inability to afford treatment is not harmless error, and the case must be remanded.

14

### C. The ALJ erred in failing to resolve an inconsistency in the consulting physician's report.

At the hearing, the ALJ asked the VE if jobs were available in the national or regional economy for someone who had the residual functional capacity that the ALJ assigned Plaintiff and who also would miss work "two to three days per month." R. 56. The VE replied that there were no such jobs available. R. 57. In her opinion, the ALJ discounted Dr. Jordan's opinion that Plaintiff would miss "two days" due to her psychological symptoms not only because "there is no treatment in support of that understanding of the claimant's limitations," but also because "there is no basis in the evidence for a reading of this statement . . . to mean that the claimant will miss two days of work per month (or week, or year)." R. 25. By including this parenthetical, the ALJ highlights an ambiguity in Dr. Jordan's opinion about missing "two days" of work; however, even the Commissioner, in her brief on appeal, understands Dr. Jordan to have indicated that Plaintiff would miss "two days of work per month." Doc. 17 at 9, 12.

If a report from a consultative examiner is inadequate or incomplete, the ALJ has a duty to further develop the record to resolve the issue. 20 C.F.R. § 404.1519p (b) ("If the report [from the consulting physician] is inadequate or incomplete, we will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."); *see also Henry*, 802 F.3d at 1267 (noting that the ALJ has the "onerous task" of "develop[ing] a full and fair record" and "must 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts'" (quoting *Cowart*,

662 F.2d at 735)). In light of the VE's testimony and because even the Commissioner understands that Dr. Jordan meant that Plaintiff would miss two days of work per month, whether Plaintiff will miss two days of work per month due to psychological limitations is critical information and potentially outcome-determinative. Therefore, under the circumstances, the ALJ erred in discounting the Dr. Jordan's finding based on inadequate wording without first contacting the consulting examiner to clarify that wording, and the case must be remanded for the ALJ to further develop the record.

Because this case is due to be remanded for further development of the record, the Court pretermits discussion of Plaintiff's remaining arguments on appeal.

## IV.    CONCLUSION

For the reasons above, it is ORDERED that this matter is REVERSED and REMANDED to the Commissioner for additional proceedings consistent with this opinion.

A final judgment will be issued separately.

DONE this 9th day of August, 2022.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE